**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| MICHAEL P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-03382-TWP-TAB |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Michael P.[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. For the following reasons, the Court **affirms** the decision of the Commissioner.

**I.    PROCEDURAL BACKGROUND**

On January 21, 2016, Michael P. protectively filed applications for DIB and SSI, alleging a disability onset date of March 15, 2015. (Filing No. 8-2 at 11.) His applications were initially denied on April 4, 2016, (Filing No. 8-4 at 3; Filing No. 8-4 at 12), and upon reconsideration on July 20, 2016, (Filing No. 8-4 at 25; Filing No. 8-4 at 32). Administrative Law Judge Jody Hilger Odell (the "ALJ") conducted a hearing on May 17, 2018, at which Michael P., represented by counsel, and a vocational expert ("VE"), appeared and testified. (Filing No. 8-2 at 38-61.) The ALJ issued a decision on October 10, 2018, concluding that Michael P. was not entitled to receive

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

benefits.  (Filing No. 8-2 at 8-22.)  The Appeals Council denied review on June 11, 2019.  (Filing No. 8-2 at 2.)  On August 9, 2019, Michael P. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c) to review the final decision of the Commissioner denying him benefits.  (Filing No. 1 at 1.)

## II.   STANDARD OF REVIEW

Under the Social Security Act, a claimant may be entitled to benefits only after he establishes that he is disabled.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors.  20 C.F.R. § 404.1520(a)(4)(i).[2]  At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments,

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects.  *See, e.g.*, 20 C.F.R. § 416.920(a)(4)(i).  The Court will take care to detail any substantive differences that are applicable to the case but will not always reference the parallel section.

20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court

must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III. FACTUAL BACKGROUND

When Michael P. filed, he alleged that he could no longer work because of the residuals of a stroke including left-sided weakness, depression, and shortness of breath. (Filing No. 8-7 at 7.) He has completed the eleventh grade. (Filing No. 8-7 at 8.) He has worked as a general laborer and in the fast food industry.[3] (Filing No. 8-7 at 9.)

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Michael P. was not disabled. (Filing No. 8-2 at 21.) At step one, the ALJ found that Michael P. had not engaged in substantial gainful activity[4] since March 15, 2015, the alleged onset date. (Filing No. 8-2 at 13.) At step two, the ALJ found that Michael P. had "the following 'severe' impairments: residual effects from stroke and coronary artery disease, status post stent placement." (Filing No. 8-2 at 13 (citations omitted).) At step

---

[3] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

three, the ALJ found that Michael P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 8-2 at 15.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. He can never climb ladders, ropes, or scaffolds and can never work at unprotected heights or around dangerous moving machinery, or operate a motor vehicle. Furthermore, he is limited [to] frequent handling and fingering with the left (non-dominant) hand.

(Filing No. 8-2 at 16.) At step four, the ALJ found that Michael P. was unable to perform any of his past relevant work as a kitchen helper and commercial/institutional cleaner. (Filing No. 8-2 at 19-20.) At step five, considering Michael P.'s age, education, work experience, and RFC, as well as the VE's testimony, the ALJ concluded that Michael P. could have performed other work through the date of the decision with jobs existing in significant numbers in the national economy in representative occupations, such as a laundry folder, cashier II, and inspector/hand packager. (Filing No. 8-2 at 20-21.)

## IV.   DISCUSSION

Michael P. raises four assignments of error, arguing that the ALJ failed to: (1) follow SSR 16-3p in assessing Michael P.'s statements concerning his subjective symptoms, (2) adequately explain her RFC finding including by utilizing a function-by-function analysis of Michael P.'s impairments, (3) provide a logical bridge from the evidence of Michael P.'s recurrent headaches to the ALJ's conclusion that Michael P. could sustain work, and (4) consider a closed period of benefits. The Court will address the arguments in turn.

A. **<u>Subjective Symptom Evaluation</u>**

Michael P. minimally develops his argument that the ALJ's evaluation of his credibility was patently wrong. He asserts that the ALJ failed to utilize the regulatory factors specified to evaluate his statements concerning his subjective symptoms. (Filing No. 10 at 19.) He also asserts that the ALJ relied on Michael P.'s reported activities of daily living to discredit him when the performance of such activities cannot be equated with meeting the demands of full-time work. (Filing No. 10 at 19-21.)

Reviewing courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). An ALJ's credibility determination is not patently wrong if it cites to specific reasons in the record. *Burmester*, 920 F.3d at 510-11; *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Alvarado v. Colvin*, 836 F.3d 744, 749 (7th Cir. 2016) (A credibility determination "tied to evidence in the record" may not be disturbed as patently wrong.). If a fully favorable determination cannot be made based solely on the objective medical evidence, SSR 16-3p directs the ALJ to consider "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms," including the regulatory factors relevant to a claimant's symptoms, such as daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *6-8; 20 C.F.R. § 404.1529(c)(3). The ALJ need discuss only the factors "pertinent to the evidence of record." SSR 16-3p, 2017 WL 5180304, at *8.

Michael P. makes no attempt to demonstrate that a more robust discussion of the regulatory factors would have supported his claim. As such, he has not developed that the ALJ's allegedly deficient discussion prejudiced his case. The Seventh Circuit has held in a social security disability context that "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)). Accordingly, any relevant argument—based on the regulatory factors that were not discussed by the ALJ—has been waived.

Moreover, Michael P. does not engage the ALJ's rationales for discrediting his allegations. The ALJ analyzed the record evidence with specific citations showing that objective examination findings were limited, Michael P.'s impairments responded favorably to treatment, he was not compliant with his treating provider's recommendations, medications controlled his symptoms, and his treating provider did not find his condition severe enough to warrant restricting his activities. (*See* [Filing No. 8-2 at 18](#)); *see also Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (noting the deference given to the administrative factfinder on judicial review, as well as the regulatory guidance instructing the ALJ to consider such evidence). Again, Michael P.'s failure to grapple with the ALJ's justifications for discrediting him invokes waiver.

As noted above, the ALJ is instructed to consider a claimant's reported activities. Even if the Court were to assume that the ALJ impermissibly equated those activities with the performance of full-time work—a contention that is not apparent from the written decision—Michael P. has waived any challenge to the ALJ's remaining justifications. As developed, Michael P.'s argument is insufficient to disturb the ALJ's credibility evaluation according to the deferential standard. *See McKinzey v. Astrue*, 641 F.3d at 890 (7th Cir. 2011) (upholding the ALJ's credibility determination

despite finding "deficiencies" such that there was "some merit in two out of three of McKinzey's attacks" because the ALJ had cited to record evidence that suggested the claimant had exaggerated symptoms and limitations).

**B.     RFC**

Michael P. also asserts that the ALJ failed to explain her RFC findings, including by failing to utilize a "mandated predicate function-by-function assessment" detailed in SSR 96-8p. (Filing No. 10 at 22.)

SSR 96-8p provides guidance that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." 1996 WL 374184, at *1. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id*.

To a certain extent, the ALJ's RFC finding, detailed above, demonstrates on its face that the ALJ did not simply determine that Michael P. was limited to one of the exertional categories. While the ALJ found that Michael P. could perform a range of light exertional work, the RFC assessment included more specific functional limitations, such as Michael P. being limited to frequent handling and fingering with his non-dominant left hand.

Moreover, the Seventh Circuit has recently joined "sister courts . . . in concluding that a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does not necessarily require remand." *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) (citing *Mascio v. Colvin*, 780 F.3d 632, 635-36 (4th Cir. 2015); *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003)). The Seventh Circuit explained that the role of reviewing courts is to verify that the

ALJ's decision is supported by substantial evidence and addresses significant evidence and the functional limitations that evidence supports. *Jeske*, 955 F.3d at 596.

Except for the evidence concerning Michael P.'s headaches—addressed along with his next assignment of error—he does not cite to any medical evidence of record to develop his argument that the ALJ's RFC discussion prejudiced his claim. (*See* Filing No. 10 at 22-24.) Again, failing to develop how a more robust discussion would have supported his case—without even identifying the specific functional limitations that were allegedly neglected—compels the Court to find that waiver applies here.

Assuming, *arguendo*, that waiver does not apply, the Court disagrees with Michael P.'s contention that "[t]he ALJ never explain[ed] the rationale behind [her RFC] finding . . . ." (Filing No. 10 at 22.) The ALJ explained that she limited Michael P. to a reduced range of light exertional work that accounted for his "left-sided weakness and occasional headaches by limiting him to occasional balancing; frequent handling and fingering with the left (non-dominant) hand; and no climbing ladders, ropes, or scaffolds, working at unprotected heights or around dangerous moving machinery, and operating a motor vehicle[.]" (Filing No. 8-2 at 18-19.)

The ALJ's preceding discussion of the record evidence demonstrated that her RFC finding was supported by substantial evidence. (*See* Filing No. 8-2 at 18.) In March 2015, Michael P. was hospitalized after suffering multiple acute, right middle cerebral artery strokes in the context of alcohol abuse. (Filing No. 8-10 at 5-7.) Michael P. admitted to having been on a "binge" at the time. *Id*. As a result of the strokes, he showed residual effects, including on January 20, 2016 when an examination showed left-sided weakness and a positive Romberg's sign indicating compromised balance. (Filing No. 8-11 at 11.) At his consultative examination on March 8, 2016, the examination continued to reveal that his grip strength and finger abduction were reduced at 4/5

in the left hand; his cerebellar functioning was abnormal for "poor balance." (Filing No. 8-11 at 50.) On March 24, 2016, Michael P. was evaluated at a neurology clinic and it was noted that he had not been able to get rides to take him to physical or occupational therapy. (Filing No. 8-12 at 36.) Michael P. reported:

> Since the time of his stroke, he has not had any new stroke-like symptoms, including sudden onset weakness or numbness, sudden change in speech or vision; however, he continues to have some residual weakness on the left side that causes him difficulty with holding onto objects, tying his shoes, and trouble with balance.

*Id*. The examination revealed:

> Neurologic: Awake, alert, and oriented. Able to answer questions, and follow commands appropriately. No obvious aphasia or dysarthria. He does have his slight tremor of his face that is more noticeable when he is speaking. On cranial nerve exam, pupils are equal, round, and reactive to light. Extraocular movements are intact, without nystagmus. Facial sensation is intact to light touch bilaterally. Face appears symmetric. Hearing is intact to finger rustle bilaterally. Tongue protrudes in the midline, and there is equal palate rise. Normal shoulder shrug. Strength is 5-/5 in left shoulder abduction and left hip flexion, but is otherwise 5/5 throughout. Sensation is grossly intact to light touch bilaterally. Muscle stretch reflexes are normoactive. Finger-to-nose is intact bilaterally. Gait and stance are normal. He also has a mild intention tremor when his arms are outstretched, left greater than right.

(Filing No. 8-12 at 37.) On July 3, 2016, Michael P. presented to the emergency room with chest pains that he admitted were brought on by drinking "too much." (Filing No. 8-12 at 67.) The examination was unremarkable including normal muscle strength and no focal, neurological deficits. (Filing No. 8-12 at 68.) On October 24, 2016, his follow-up at the neurology clinic was similar to his previous visit, again noting that he had not been able to attend therapy—and was discharged from treatment as a result—but he did not have any new complaints. (Filing No. 8-14 at 51.) The specialist noted "[i]t [was] unclear whether [his] tremor [of the jaw] was due to something like an essential tremor, or secondary to alcohol use." *Id*. The neurological examination

was completely normal including full muscle strength throughout; the only exception, was the "fairly mild" tremor. (Filing No. 8-14 at 52.)

The ALJ's RFC finding is consistent with the record evidence she cited, confronting the mild left-sided weakness that improved over time, as well as Michael P.'s issues with balance. At his most recent neurology examination, he reported that "he [was] having some difficulty with gait at [that] time, but ha[d] not had any recent falls." (Filing No. 8-14 at 51.) From the evidence, the ALJ's conclusion was reasonable that Michael P. could have sustained light exertional work but would have needed to avoid any environmental hazards and the use of his left hand on more than a frequent[5] basis.

Furthermore, the ALJ's RFC finding was supported by the opinions of the reviewing consultants that were given "significant weight." (Filing No. 8-2 at 19.) At reconsideration, the reviewing consultant assessed that Michael P. could perform a range of light exertional work with limited use of his left hand because of the evidence of strokes and the objective findings including from the consultative examination. (Filing No. 8-3 at 47-49.) The ALJ reasoned that additional environmental limitations were needed based on Michael P.'s subjective complaints, as well as the updated evidence concerning his combined impairments. (Filing No. 8-2 at 19.) No medical source assessed more restrictive limitations than those found by the ALJ. The Seventh Circuit has held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). Accordingly, the Court does not find error here.

---

[5] During an eight-hour workday, "'[f]requent' means occurring from one-third to two-thirds of the time." SSR 83-10 (S.S.A. Jan. 1, 1983), 1983 WL 31251, at *6.

C.    **Headaches**

Michael P. has more fully developed his argument that the ALJ failed to address his ability to sustain work secondary to complaints of recurrent headaches. (*See* Filing No. 10 at 25-28.) Specifically, he contends that the ALJ failed to confront supportive evidence including that he visited the emergency room for headache pain and was prescribed prescription-strength Ibuprofen by a treating provider. (Filing No. 10 at 25-26.) Michael P. asserts that "there was no real discussion of how and why these headaches would not prevent [him] from being able to maintain employment." (Filing No. 10 at 26.)

However, the Court can trace the ALJ's logic for concluding that Michael P. would have been able to sustain work at the light exertional level so long as he was precluded from exposure to environmental hazards. The ALJ cited Michael P.'s testimony that "his headaches occur every now and then, and improve with Advil." (Filing No. 8-2 at 18.) As noted above, the ALJ is instructed to consider a claimant's medications and his response to treatment when evaluating his subjective symptoms. Michael P. testified initially that his ability to work was compromised by "not being able to stand during a certain amount of time or walk a certain amount of distance or do any heavy lifting." (Filing No. 8-2 at 44.) The ALJ later asked Michael P. if he still had headaches and he testified, "Every now and then, yes, frequently." (Filing No. 8-2 at 51.) When asked when was the last time he had one, he testified, "Just the other day watching a game I had a headache but it wasn't  -- I took some -- I have some Advil that I take sometimes to help with that." (Filing No. 8-2 at 51-52.) The following exchange then occurred:

> [Q] Okay.  Does it ever get so bad that you have to go lie down or, you know, stops you from doing what you want to do?
>
> [A] Well, yeah, when it gets -- when it gets too bad, I lay down, you know, just sit down or lie sometimes.  If I'm walking and I get [a] headache, I just sit down until it goes away or whatever.

12

> [Q] Do you have any sense as to how often that happens or it gets so bad it kinds of stops you from doing what you would want to do?
>
> [A] Sometimes it makes me, you know, when I get headaches, you know, like, I said even when I'm putting my glasses on to read something, you know, that I think it's the glasses too. It makes my head kind of dizzy or whatever but --
>
> [Q] Okay.
>
> [A] -- if I have something, like, I said I sit down and just let it go away. If it gets too bad, I'm going to take a couple of aspirins or whatever.

(Filing No. 8-2 at 52.) The Court defers to the ALJ's interpretation of Michael P.'s testimony that his headaches were controlled with Advil.

Again, the ALJ's summary of the medical evidence provided record citations supporting her relevant conclusions. At the initial evaluation at the neurology clinic in March 2016, Michael P. reported "a left-sided headache that is sharp and shooting. It is associated with nausea and photophobia. He denies any facial numbness or paresthesias. Denies any change in vision. His headaches occur about two times per week, and last 30 to 45 minutes. Sometimes they wake him up from sleep." (Filing No. 8-12 at 36.) The treating specialist concluded that "[h]is headaches sound migrainous in nature." (Filing No. 8-12 at 37.) At the follow-up in October 2016, his headaches were "improved from [his] previous [visit], particular[ly] in intensity. He is still having perhaps 1 or 2 episodes per week, lasting about [a] half an hour. They are generally not waking him from sleep any longer." (Filing No. 8-14 at 51.)

The ALJ did not specifically confront some of the relevant evidence. For example, at the March 2016 neurology clinic visit, Michael P.'s provider prescribed him a limited supply of prescription strength Ibuprofen for "breakthrough headache management," but instructed him to not take more than two per week. (Filing No. 8-12 at 37.) That neurology evaluation was precipitated, in part, by a recent emergency room visit where Michael P. had complained of a

13

persistent headache but stated also that he had been out of the Advil that usually provided "relief." (Filing No. 8-12 at 42-43.) It is unclear whether and to what extent Michael P. used the prescription Ibuprofen. Regardless, the evidence that was not confronted by the ALJ did not conflict in any significant way with her conclusion that Michael P.'s headaches were controlled with Advil.

The record evidence including Michael P.'s testimony gave little indication that his headaches were disabling in frequency, duration, or intensity. With the use of medication, namely Advil, he would appear able to sustain work. Moreover, based on his testimony the ALJ's conclusion was reasonable that Michael P.'s occasional headaches could be managed in the workforce by limiting his exposure to hazards. (Filing No. 8-2 at 18-19.) Again, no medical source assessed that Michael P. would need additional limitations because of his headaches. The ALJ need include limitations based on subjective symptoms only to the extent that she finds them credible. *Simila*, 573 F.3d at 521. Accordingly, based on the record, the Court does not find reversable error resulting from the ALJ's failure to more fully explain her conclusions concerning Michael P.'s headaches.

**D.     Closed Period**

Michael P. also contends that the ALJ's decision was inconsistent with the Social Security Act and the SSA's guidance because the ALJ did not explain whether she had considered granting benefits for a closed period.[6] (Filing No. 10 at 29-30.) Michael P. notes that "[u]nfortunately, there is no discussion during the hearing of a potential date showing medical improvement." (Filing No. 10 at 29.)

---

[6] A "closed period" is a finite period that started and ended before the date of the disability decision. *See, e.g., Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987).

A claimant is entitled to a period of disability so long as they satisfy the definition of disability for a continuous period of not less than twelve months and have filed an application within the appropriate timeframe relative to that period. 20 C.F.R. §§ 404.315, 404.316, and 404.1505. The Seventh Circuit has explained that "[b]efore limiting benefits to a closed period, an ALJ must conclude either that a claimant experienced 'medical improvement' as evidenced by changes in the symptoms, signs, or test results associated with her impairments, or else that an exception to this rule applies." *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1594(a), (b)(1)) (other citations omitted).

To begin, there is no authority that the ALJ must specifically discuss her consideration of a closed period in every case. The need to consider, conclude, and presumably explain that medical improvement has occurred is necessary only if the ALJ determined that a closed period applied. In other words, once again, there is no authority supporting that an ALJ need discuss her consideration of medical improvement in every case. A reviewing court may find reversable error if the ALJ did not separately consider the evidence relevant to a potential closed period that was distinctly different than the evidence of current functioning. *Brown v. Massanari*, 167 F. Supp. 2d 1015, 1020-21 (N.D. Ill. 2001).

However, the Court declines to find reversable error here for multiple reasons. Neither Michael P. nor his hearing representative asserted that Michael P. was seeking a closed period based on medical improvement. The Seventh Circuit has held that "[w]hen an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits." *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). Michael P. continued to maintain at the hearing that there were reasons preventing him from

15

working. There were also no salient facts that might trigger such a duty to at least consider the issue, such as when a claimant has made a successful return to work and provides some explanation as to how his condition had improved to the point such work was possible.

Moreover, Michael P. has again not developed his argument on appeal. He has not demonstrated how the record once supported disability for a finite period but later showed medical improvement that allowed for the performance of substantial gainful activity. Without developing prejudice from the allegedly deficient discussion of the ALJ, Michael P.'s argument is waived.

Furthermore, as has been detailed above, the ALJ's discussion of the relevant evidence was not limited to Michael P.'s current functioning at or around the time of the hearing. The ALJ reasoned, in part, that Michael P.'s impairments were ultimately amenable to treatment when they were considered longitudinally. The ALJ also evaluated the evidence of the severity of Michael P.'s impairments around the time of his alleged onset—in the period immediately after his strokes. As such, it can be inferred that the ALJ considered Michael P.'s functioning throughout the period under review. Consistent with this, the ALJ specifically assigned limitations supported by Michael P.'s ongoing subjective reports that were not necessarily well supported by the updated objective evidence. Despite some signs of objective improvement, Michael P. continued to report ongoing symptoms and pursued ongoing disability on that basis. Again, even assuming, *arguendo*, that waiver does not apply to Michael P.'s contention on appeal that he was entitled to a closed period, the record and controlling legal authority does not support that the ALJ was obligated to discuss the issue in her written decision.

## V. <u>CONCLUSION</u>

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). For the reasons stated above, the

Court finds no legal basis to reverse the ALJ's decision. The final decision of the Commissioner is **AFFIRMED**. Michael P.'s appeal is **DISMISSED**.

    **SO ORDERED.**

Date: 10/14/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov